UNITED STATES of America, Plaintiff-Appellee,

v.

Floyd BALOUGH, Defendant-Appellant.

No. 84–5294.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 30, 1986.

Decided July 2, 1987.

Phillip H. Cherney, Palo Alto, Cal., for defendant-appellant.

Robert Pallemon, James R. Asperger, Los Angeles, Cal., for plaintiff-appellee.

Before NELSON, HALL and KOZINSKI, Circuit Judges.

NELSON, Circuit Judge:

Floyd Balough appeals his conviction on two counts of bank robbery by use of a dangerous weapon in violation of 18 U.S.C. § 2113(a)(d) (1982). Balough contends that he did not knowingly and intelligently waive his right to counsel and that the district court abused its discretion in denying his motion to withdraw his guilty plea. Because we agree that Balough did not knowingly and intelligently waive his sixth amendment right to counsel, we reverse and remand for reconsideration of Balough's motion to withdraw his guilty plea.

## I. BACKGROUND

Floyd Balough was indicted on three counts of bank robbery by use of a dangerous weapon in violation of 18 U.S.C. § 2113(a)(d) (1982). Following a pretrial motion to suppress evidence, Balough pleaded guilty on July 17, 1984 to two of the counts and the government agreed to drop the third count. Throughout these proceedings, Balough was represented by appointed counsel.

While represented by appointed counsel, Balough filed motions to withdraw his guilty plea and to appear pro se. On September 24, 1984, both motions were heard by the district court. Before granting Balough's motion to appear pro se, the district court queried Balough to establish on the record that Balough unequivocally intended to waive his right to counsel, and that he clearly understood he had an absolute right to be represented by counsel at all stages of the proceedings and would be required to handle the rest of his case, including sentencing, himself if the court granted his motion.[1] The district court then granted

---

1. The entire colloquy at the hearing on Balough's motion to appear pro se was, as follows:
   THE COURT: Now, Mr. Balough, your attorney, Mr. Price, has notified the court that he is not able to be here until about 3:00 o'clock.
   MR. BALOUGH: Well, I am ready to proceed right now, your Honor.

Balough's motion to proceed pro se and heard argument on his motion to withdraw his guilty plea.

After hearing Balough's arguments and questioning his former attorney, the district court found that Balough had pleaded guilty freely and voluntarily and had received effective assistance of counsel in entering his plea. Accordingly, the district court denied Balough's motion to withdraw his guilty plea. Balough subsequently appeared pro se at his sentencing hearing, and was sentenced to concurrent fourteen-year terms in federal prison on each of the two robbery counts. Balough timely appealed, and counsel for his appeal was appointed by this court.

## II. DISCUSSION

■ A criminal defendant has an absolute right under the sixth amendment to be represented by counsel or to represent himself, if he so chooses. *Faretta v. California*, 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562 (1975); *United States v. Harris*, 683 F.2d 322, 324 (9th Cir.1982). If a defendant chooses to represent himself, however, his decision must be made knowingly and intelligently; that is, a criminal defendant must be aware of the nature of the charges against him, the possible penalties, and the dangers and disadvantages of

self-representation, before his decision to waive counsel will be knowing and intelligent. *United States v. Rylander*, 714 F.2d 996, 1005 (9th Cir.1983), *cert. denied*, 467 U.S. 1209, 104 S.Ct. 2398, 81 L.Ed.2d 355 (1984); *Harris*, 683 F.2d at 324.

In order to waive the right to counsel knowingly and intelligently, a criminal defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *United States v. Bird*, 621 F.2d 989, 991 (9th Cir.1980) (quoting *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525, 2541); *United States v. Aponte*, 591 F.2d 1247, 1249 (9th Cir.1978). Accordingly, we have held that "[a] waiver of counsel cannot be knowing and intelligent unless the accused appreciates the possible consequences of mishandling these core functions and the lawyer's superior ability to perform them." *United States v. Kimmel*, 672 F.2d 720, 721 (9th Cir.1982); *see United States v. Gillings*, 568 F.2d 1307, 1308–09 (9th Cir.) (district court "must assure itself that the defendant understands the charges and the manner in which an attorney can be of assistance."), *cert. denied*, 436 U.S. 919, 98 S.Ct. 2267, 56 L.Ed.2d 760 (1978). Throughout this inquiry, we must focus on what the defendant understood,

THE COURT: Are you ready to proceed to hear the motion to appear pro se?
MR. BALOUGH: I'll hear that motion, yes, your Honor.
THE COURT: You have filed a motion to appear pro se so that you may represent and argue your own motion to withdraw your guilty plea.
MR. BALOUGH: That is correct.
THE COURT: Is that what you wish to do?
MR. BALOUGH: Yes, I do.
THE COURT: You do realize that you have the absolute right to be represented by counsel for these proceedings?
MR. BALOUGH: Pertaining to the motion to withdraw?
THE COURT: Pertaining to the motion to withdraw the guilty plea.
MR. BALOUGH: Yes, I understand that.
THE COURT: Or any other proceedings.
MR. BALOUGH: Yes, I understand that.
THE COURT: Do you understand that if you are granted permission to appear pro se that you will be required to handle the sentencing yourself—

MR. BALOUGH: I understand that, your Honor.
THE COURT: —if the Court denies your motion to withdraw your plea?
MR. BALOUGH: Yes, I do.
THE COURT: And you understand also, do you not, that if—of course the Court has previously appointed Mr. Price to represent you, and you're fully aware that you are entitled to be represented at all stages of the proceedings by counsel?
MR. BALOUGH: Yes, I understand that.
THE COURT: Nevertheless, you choose at this time to take over at this time the conduct of this case on your own from this point forward; is that right?
MR. BALOUGH: That's correct, your Honor.
THE COURT: The Court grants you permission to appear pro se, and will now proceed to hear the motion which you have filed, which is to withdraw the plea of guilty, which you heretofore entered on July the 17th, 1984.

rather than on what the court said or understood. *Harris*, 683 F.2d at 325; *Kimmel*, 672 F.2d at 722.

The preferred procedure to ensure that a waiver is knowingly and intelligently made is for the district court to discuss each of the three elements with the defendant in open court. *Rylander*, 714 F.2d at 1005; *Harris*, 683 F.2d at 324; *Kimmel*, 672 F.2d at 722; *Bird*, 621 F.2d at 991; *Aponte*, 591 F.2d at 1250. In *Harris*, 683 F.2d at 324, we emphasized that

> a district court should not grant a defendant's request to waive representation of counsel and serve as his own counsel, without discussing with the defendant, in open court, whether the waiver was knowingly and intelligently made, with an understanding of the charges, the possible penalties, and the dangers of self-representation. This is clearly the preferable procedure and should be followed by district courts in every case.

▪ Nonetheless, we have also held that a limited exception may exist whereby a district court's failure to discuss each of the elements in open court will not necessitate automatic reversal when the record as a whole reveals a knowing and intelligent waiver. *Harris*, 683 F.2d at 324; *Kimmel*, 672 F.2d at 722; *Bird*, 621 F.2d at 991; *Cooley v. United States*, 501 F.2d 1249, 1252 (9th Cir.1974), *cert. denied*, 419 U.S. 1123, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975); *see also United States v. Gillings*, 568 F.2d at 1309 (waiver of counsel effective because of defendant's extensive discussion with district court and consultation with attorney). Absent a district court's discussion of the three elements, we will look to "the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused" to determine whether the waiver was knowing and intelligent despite the absence of a specific inquiry on the record. *Kimmel*, 672 F.2d at 722 (quoting *Cooley*, 501 F.2d at 1252).

Our cases have consistently held, however, that this "limited exception [is] to be applied in rare cases." *Harris*, 683 F.2d at 324; *see also Rylander*, 714 F.2d at 1005

("It is an unusual case where, absent such a colloquy, a knowing and intelligent waiver of counsel will be found."); *Aponte*, 591 F.2d at 1250 ("It will be only the rare case ... in which an adequate waiver will be found on the record in the absence of a specific inquiry by the trial judge."). Accordingly, we have rarely found a knowing and intelligent waiver absent specific inquiry into the elements by the district court unless the case involved "an unusual fact situation in which the background and experience of the defendant in legal matters was apparent from the record." *Harris*, 683 F.2d at 324.

▪ In the case at bar, the district court did not specifically discuss the three elements with Balough at the hearing on his motion to appear pro se. Therefore, we must inquire into the record as a whole to determine whether Balough nonetheless sufficiently understood the nature of the charges against him, the possible penalties, and the dangers and disadvantages of self-representation, to waive his right to counsel knowingly and intelligently.

The record indicates that, before taking Balough's guilty plea on July 17, 1984, the district court carefully discussed with Balough the nature of the two counts of bank robbery against him and the maximum possible penalties under 18 U.S.C. § 2113(a)(d) (1982). At no point in the record, however, does it appear that the district court apprised Balough that self-representation presented any dangers or disadvantages. At Balough's hearing to waive counsel, the district court only advised Balough that he had a right to counsel and would be required to handle the rest of his case himself if allowed to proceed without counsel; at his sentencing hearing, Balough was merely asked whether he wished to continue without counsel. At each crucial stage, Balough was allowed to proceed on his own without being warned that he would be at a disadvantage doing so or advised how trained counsel could assist him.

Nothing in the record indicates that Balough has any legal training, specialized

education,[2] or unusual background which might make it apparent that he possessed a sufficient understanding of the disadvantages of self-representation. The government, however, argues that because Balough was assisted by counsel up until the hearing on his motion to waive counsel, and had numerous previous felony convictions, he had ample opportunity to observe the advantages of representation and acquired extensive experience with the legal process. In *Kimmel,* we held that a well-educated defendant, who was assisted by advisory counsel throughout his case, who had been prosecuted several times before and had even represented himself in at least one case, could not be deemed to understand sufficiently the dangers and disadvantages of self-representation absent additional facts such as indicating that he had been informed about the risks of self-representation at some point previously. *Kimmel,* 672 F.2d at 722.

In this case, Balough was not assisted by advisory counsel[3] during his pro se appearances, and the record does not indicate that he has represented himself before or has ever been apprised of the dangers and disadvantages of self-representation. As we noted in *Kimmel,* the mere fact that a criminal defendant has been repeatedly exposed to the legal process and has even represented himself before cannot, without more, suffice to support a `finding of a knowing and intelligent waiver. *Id.* Without some assurance that the defendant has been apprised of the dangers and disadvantages of self-representation, we cannot say that such a defendant has waived his right to counsel "with eyes open." *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541; *Bird,* 621 F.2d at 991.

The government also argues that Balough represented himself well, filing well-researched motions and arguing articulately on his own behalf. Even if true, this is irrelevant to show that Balough understood the dangers and disadvantages of self-representation at the time he sought to waive his right to counsel. "The manner in which a defendant conducts his defense cannot establish his state of mind at the time he opted for self-representation." *Aponte,* 591 F.2d at 1250 (citing *Cooley,* 501 F.2d at 1252).

The troublesome issue in this case is whether Balough sufficiently understood the dangers and disadvantages of self-representation to waive his right to counsel knowingly and intelligently. In the absence of a specific inquiry by the district court on the record, or additional facts to show that Balough was adequately apprised by another source or had a sufficient background and experience in legal matters to understand the risks of self-representation, we simply have no assurance that he did.

The government urges us to consider this harmless error. Our previous cases have remanded without specifically addressing the applicability of the harmless error doctrine. *See Rylander,* 714 F.2d at 1005; *Harris,* 683 F.2d at 326; *Kimmel,* 672 F.2d at 721–23; *Bird,* 621 F.2d at 991; *United States v. Crowhurst,* 596 F.2d 389, 391 (9th Cir.1979); *Aponte,* 591 F.2d at 1250. Other circuits are split on the question whether the harmless error doctrine applies when a defendant has been denied his right to counsel. *Compare United States v. Welty,* 674 F.2d 185, 194 n. 6 (3d Cir.1982) (harmless error doctrine is inappropriate in this context), *with Richardson v. Lucas,* 741 F.2d 753, 757 (5th Cir.1984) (applying harmless error doctrine), *and United States v. Gipson,* 693 F.2d 109, 112

---

**2.** Even advanced education in a nonlegal field or extensive experience in other sophisticated areas cannot suffice to show an adequate understanding of the disadvantages of self-representation. "An intelligent professional man may well be competent in his field and yet have no understanding of the law or legal procedures." *Harris,* 683 F.2d at 325 (physician did not adequately understand disadvantages of self-representation); *see also Rylander,* 714 F.2d at 1005 (cor-

porate president); *Bird,* 621 F.2d at 991 (retired professor).

**3.** Had Balough had the assistance of advisory counsel throughout the rest of the proceedings, this alone would also not have sufficed to show a knowing and intelligent waiver unless advisory counsel apprised Balough of the dangers and disadvantages of self-representation. *See Harris,* 683 F.2d at 325; *Kimmel,* 672 F.2d at 721.

(10th Cir.1982) (same), *cert. denied,* 459 U.S. 1216, 103 S.Ct. 1218, 75 L.Ed.2d 455 (1983).

█ The Supreme Court's recent decision in *Rose v. Clark,* —— U.S. ——, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), makes it clear that the Third Circuit's approach is correct. In *Rose,* the Court recognized that the harmless error doctrine does not apply in all contexts. *Id.* at 3106. The Court noted that the doctrine presupposes that a defendant is represented by counsel. *Id.; see also Glasser v. United States,* 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942) ("The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.").

In this case, Balough was denied his right to counsel at both the hearing on the motion to withdraw his guilty plea and the sentencing hearing. *See Mempa v. Rhay,* 389 U.S. 128, 134, 88 S.Ct. 254, 256, 19 L.Ed.2d 336 (1967) (defendant has a right to counsel at every stage of a criminal proceeding where substantial rights may be affected). Therefore, harmless error analysis is inappropriate. *Rose,* 106 S.Ct. at 3106.

For the reasons above, therefore, we reverse and remand for reconsideration of Balough's motion to withdraw his guilty plea.

REVERSED and REMANDED.

KOZINSKI, Circuit Judge, with whom Circuit Judge CYNTHIA HOLCOMB HALL joins, concurring:

I join the court's opinion because it correctly applies the law of this circuit to the case before us.[1] I fear, however, that requiring the district judge to recite a formal litany before allowing a defendant to exercise his right to self-representation creates unwarranted procedural snares for already busy district courts and unduly burdens the very rights guaranteed by *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

District courts are well aware of their duty under *Faretta* to make sure that a defendant who wants to represent himself " 'knows what he is doing and his choice is made with eyes open.' " *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541 (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)). District judges deal with criminal defendants every day. They are in the best position to evaluate whether the defendant's decision is made knowingly and intelligently: They can consider the level of understanding demonstrated by the defendant, his background and prior experience with the legal system, the deliberation with which he has made the decision to proceed without counsel and his seriousness of purpose. We ought to give a district judge's determination greater deference and rely far less on rote recitation of mechanical formulas.[2]

I am also concerned that requiring judge and defendant to engage in a verbal minuet may, in many cases, unduly inhibit the defendant from exercising his rights under *Faretta.* We must not lose sight of the fact that "[t]he right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." *Faretta,* 422 U.S. at 819–20, 95 S.Ct. at 2533–34. What inquiry is to be made and the degree to which it should be pressed is a matter best left to the district judge. Criminal defendants may construe a detailed enumeration of the dangers and pitfalls of proceeding without counsel as a

---

1. Our cases hold that the district court must discuss with the defendant on the record the nature of the charges against him, the possible penalties and the dangers of self-representation. *United States v. Rylander,* 714 F.2d 996, 1005 (9th Cir.1983), *cert. denied,* 467 U.S. 1209, 104 S.Ct. 2398, 81 L.Ed.2d 355 (1984); *United States v. Harris,* 683 F.2d 322, 324 (9th Cir.1982). Absent a formal discussion specifically including each of these three elements, "it is [the] unusual

case" where we can affirm the district court's grant of a criminal defendant's motion to represent himself. *Rylander,* 714 F.2d at 1005.

2. Nothing in the record—other than the failure to recite the proper litany—calls into question the learned district judge's conclusion that Balough knowingly and intelligently exercised his rights under *Faretta.*

warning that, if they choose to represent themselves anyway, the court will be disposed against them. Criminal proceedings are inherently intimidating and, despite the careful efforts of district judges, defendants may well perceive a formal litany by the district court as a veiled threat. We should allow district judges to dispense with all or part of the litany whenever they see good reason for doing so.

Appellate judges are fond of inventing formulas, tests and rules to constrain trial courts. Unable to participate in trial litigation directly, they gaze upon it with suspicion from a distance—a height, some would insist. The realities of the courtroom—the dozens of details that a district judge is able to absorb, assimilate and consider—escape appellate scrutiny simply because the reporter can capture only the words spoken, not the inflection with which they are delivered or the look (or absence thereof) that may accompany them. Consigned to watching the courtroom's dramas flicker by like shadows on a cave wall, appellate judges are wont to seek clarity by forcing the actors to take exaggerated, stylized steps that leave images sufficiently distinctive to be examined and reviewed on a cold record.

This faith in procedural choreography is, in my view, fundamentally flawed. Appellate courts cannot foresee all contingencies; they cannot reduce every conceivable factor to a neat formula, nor anticipate every factual nuance a district judge might grasp by being there, able to hear, speak and observe. Nor can procedural incantations fulfill the lofty aspirations appellate judges have for them. A colloquy conducted in a rote and mechanical fashion, like a *Miranda* warning given in a disinterested tone, may look reassuring on the record but will do little to protect the rights of the accused. And, ritual has its costs; it is inflexible by nature and may as often defeat the ends it is designed to advance as serve them.

Appellate judges should be aware of their limitations. They can guide and review, but they cannot run the show. The task of safeguarding the rights of criminal defendants ultimately rests with the experienced men and women who preside in our district courts. We should let them do their jobs.